**WEBBER MCGILL LLC**
Douglas J. McGill, Esq.
100 E. Hanover Avenue, Suite 401
Cedar Knolls, New Jersey 07927
Tel: (973) 739-9559
dmcgill@webbermcgill.com
*Attorneys for Debtor-in-Possession*

**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| In re:<br><br>~~298 William~~210 SPRINGDALE EO LLC,<br><br>　　　　　Debtor-in-Possession. | Chapter 11<br><br>Case No. 24-~~16836~~15881 (VFP) |

**~~SECOND AMENDED~~ DISCLOSURE STATEMENT PURSUANT TO § 1125 OF THE BANKRUPTCY CODE DESCRIBING SECOND AMENDED CHAPTER 11 PLAN OF REORGANIZATION**

　　　PLEASE READ THIS DISCLOSURE STATEMENT CAREFULLY. THIS DISCLOSURE STATEMENT CONTAINS INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THIS PLAN OF REORGANIZATION. THE PLAN PROPONENT BELIEVES THAT THIS PLAN OF REORGANIZATION IS IN THE BEST INTEREST OF THE CREDITORS AND THAT THE PLAN IS FAIR AND EQUITABLE. THE PROPONENT URGES THAT THE VOTER ACCEPT THE PLAN.


~~298 WILLIAM~~210 SPRINGDALE EO LLC

By: PL MM ROC LLC, Managing Member

　　　　By: _/s/_____
　　　　　　Thomas J. Caleca, Sole Member

Dated: ~~May~~July 20, 2025

## I.    INTRODUCTION

~~298 William~~210 Springdale EO LLC (the "Debtor") is the debtor-in-possession in the instant bankruptcy case.  On June 11, 2024, the Debtor commenced a bankruptcy case by filing a voluntary chapter 11 petition under the United States Bankruptcy Code (the "Bankruptcy Code"), 11 U.S.C. § 101 et seq.  Chapter 11 of the Bankruptcy Code allows the Debtor, and, under some circumstances, creditors and other parties in interest, to propose a Plan of Reorganization ("Plan").  The Plan may provide for the Debtor to reorganize by continuing to operate, to liquidate by selling assets of the estate, or a combination of both.  The Debtor is the party proposing the Plan sent to you in the same envelope as this document.   THE DOCUMENT YOU ARE READING IS THE DISCLOSURE STATEMENT FOR THE PLAN WHICH IS ANNEXED HERETO AS **Exhibit A**.

This is a Plan of reorganization.  In other words, the Proponent seeks to make payments under the Plan by funding payments through a cash infusion as well as continued operations.

### A.    Purpose of This Document

This Disclosure Statement summarizes what is in the Plan, and tells you certain information relating to the Plan and the process the Court follows in determining whether or not to confirm the Plan.

**READ THIS DISCLOSURE STATEMENT CAREFULLY IF YOU WANT TO KNOW ABOUT:**

**(1)  WHO CAN VOTE OR OBJECT;**

**(2)    THE PROPOSED TREATMENT OF YOUR CLAIM (i.e., what your claim will receive if the Plan is confirmed), AND HOW THIS TREATMENT COMPARES TO WHAT YOU WOULD RECEIVE IN LIQUIDATION;**

1

(3)      **THE HISTORY OF THE DEBTOR AND SIGNIFICANT EVENTS DURING THE BANKRUPTCY;**

(4)      **WHAT THE COURT WILL CONSIDER WHEN DECIDING WHETHER TO CONFIRM THE PLAN;**

(5)      **THE EFFECT OF CONFIRMATION; AND**

(6)      **THE FEASIBILITY OF THE PLAN.**

This Disclosure Statement cannot tell you everything about your rights.  You should consider consulting your own lawyer to obtain more specific advice on how this Plan will affect you and what is the best course of action for you.

Be sure to read the Plan as well as the Disclosure Statement.  If there are any inconsistencies between the Plan and the Disclosure Statement, the Plan provisions will govern.

Section 1125 of the Bankruptcy Code requires a Disclosure Statement to contain "adequate information" concerning the Plan.  The term "adequate information" is defined in section 1125(a) as "information of a kind, and in sufficient detail," about a debtor and its operations "that would enable a hypothetical reasonable investor typical of holders of claims or interests" of the debtor to make an informed judgment about accepting or rejecting the Plan.  The Bankruptcy Court has determined that the information contained in this Disclosure Statement is adequate, and it has approved this document in accordance with section 1125 of the Bankruptcy Code.

This Disclosure Statement is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a proof of claim against the Debtor and to each interest holder on record as of the date of approval of this Disclosure Statement.  Under the Bankruptcy Code, your acceptance of the Plan may not be solicited unless you receive a copy of this Disclosure Statement prior to or concurrently with such solicitation.

2

**B.**      **Confirmation Procedures**

<u>Persons Potentially Eligible to Vote on the Plan</u>

In determining acceptance of the Plan, votes will only be counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation of the Plan, has filed with the Court a proof of claim which has not been disallowed or suspended prior to computation of the votes on the Plan.  The Ballot Form that you received does not constitute a proof of claim.  If you are uncertain whether your claim has been correctly scheduled, you should check the Debtor's Schedules, which are on file at the office of the Clerk of the Bankruptcy Court located at:  United States Bankruptcy Court, U.S. Court House, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102, and also available online at the Bankruptcy Court's website.  The Clerk of the Bankruptcy Court will not provide this information by telephone.

THE BANKRUPTCY COURT HAS NOT YET CONFIRMED THE PLAN DESCRIBED IN THIS DISCLOSURE STATEMENT.  IN OTHER WORDS, THE TERMS OF THE PLAN ARE NOT YET BINDING ON ANYONE.  HOWEVER, IF THE COURT LATER CONFIRMS THE PLAN, THEN THE PLAN WILL BE BINDING ON THE DEBTOR AND ON ALL CREDITORS AND INTEREST HOLDERS IN THIS CASE.

**1.**      **Time and Place of the Confirmation Hearing**

The hearing at which the Court will determine whether to confirm the Plan will take place on **August 28,** 2025, at **11:00 a.m.** in Courtroom #3B, United States Bankruptcy Court, U.S. Court House, Martin Luther King, Jr. Federal Building, 50 Walnut Street, Newark, New Jersey 07102.

3

**2.    Deadline for Voting For or Against the Plan**

If you are entitled to vote, it is in your best interest to timely vote on the enclosed ballot and return the ballot to:

> Douglas J. McGill, Esq.
> Webber McGill LLC
> 100 E. Hanover Avenue, Suite 401
> Cedar Knolls, New Jersey 07927
> dmcgill@webbermcgill.com

Your ballot must be received by **August 21, 2025** or it will not be counted.

**3.    Deadline for Objecting to Confirmation of the Plan**

Objections to the confirmation of the Plan must be filed with the Bankruptcy Court and served upon Douglas J. McGill, Esq., Webber McGill LLC, 100 E. Hanover Avenue, Suite 401, Cedar Knolls, New Jersey 07927 on or before **August 21, 2025.**

**4.    Identity of Person to Contact for More Information Regarding the Plan**

Any party desiring further information about the Plan should contact Douglas J. McGill, Esq., at the address indicated above.

**5.    Disclaimer**

The financial data relied upon in formulating the Plan is based on information provided by the Debtor.  The information contained in this Disclosure Statement is provided by the Debtor.  The Plan Proponent represents that everything stated in the Disclosure Statement is true to the Proponent's best knowledge.

**PLEASE NOTE THAT THE APPROVAL OF THIS DISCLOSURE STATEMENT BY THE BANKRUPTCY COURT DOES NOT CONSTITUTE A RULING ON THE MERITS, FEASIBILITY OR DESIRABILITY OF THE PLAN.**

4

## II.     BACKGROUND

### A.     Description and History of the Debtor's Business

The Debtor's sole asset is the real property and improvements thereon located at 210 Springdale Avenue in East Orange, New Jersey (the "Property").   The Property is a 17-unit mixed residential and commercial tenanted building.   Currently, sixteen of the seventeen units are leased, and the Debtor collects in excess of $21,000 in monthly rent.

### B.     Principals of the Debtor's Business/Management

Thomas J. Caleca is the sole member of PL MM ROC LLC, which in turn is the managing member of the Debtor.  In such capacity, Mr. Caleca has continued to manage the Debtor during the bankruptcy.

### C.     Events Leading to Chapter 11 Filing

Like many businesses, the Debtor's business suffered in the wake of the Covid-19 Pandemic.  On December 8, 2023, the Debtor's mortgage lender obtained a foreclosure judgment, and a sheriff's sale was eventually scheduled to take place in June of 2024.

### D.     Significant Events During the Bankruptcy

#### 1.     Bankruptcy Proceedings

The following is a chronological list of significant events which have occurred during this case.

- Voluntary petition filed on June 11, 2024

- Section 341(a) meeting of creditors held on July 17, 2024

- By Order dated December 18, 2024, the Bankruptcy Court modified the automatic stay to allow the Debtor's mortgage lender to reschedule a sheriff's sale, with the proviso that an actual sale remained subject to the automatic stay pending further order of the Court.

5

**2.  Actual and Projected Recovery of Preferential or Fraudulent Transfers**

The Debtor does not intend to file any fraudulent transfer or preference actions.

III.   **SUMMARY OF PLAN**

A.   **What Creditors and Interest Holders Will Receive Under the Proposed Plan**

As required by the Bankruptcy Code, the Plan classifies claims and interests in various classes according to their right to priority of payments as provided in the Bankruptcy Code.  The Plan states whether each class of claims or interests is impaired or unimpaired.  The Plan provides the treatment each class will receive under the Plan.

B.  **Unclassified Claims**

Certain types of claims are not placed into voting classes; instead they are unclassified. They are not considered impaired and they do not vote on the Plan because they are automatically entitled to specific treatment provided for them in the Bankruptcy Code.  As such, the Proponent has <u>not</u> placed the following claims in a class.  The treatment of these claims is provided below.

1.   **Administrative Expenses and Fees**

Administrative expenses are claims for costs or expenses of administering the Debtor's Chapter 11 case which are allowed under Code Section 503(b).  Fees payable to the Clerk of the Bankruptcy Court and the Office of the United States Trustee were also incurred during the Chapter 11 Case.  The Code requires that all administrative expenses be paid on the Effective Date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists all of the Debtors' unpaid administrative fees and expenses an

6

estimate of future professional fees and other administrative claims and fees and their treatment the

Plan:

Plan:

Formatted: Indent: First line: 0"

| NAME | AMOUNT ESTIMATED | TREATMENT | TYPE OF CLAIM |
|---|---|---|---|
| Webber McGill LLC (exclusive of prepetition retainer) | $15,000 | Payment in full on later of Effective Date or entry of order allowing fees | Administrative |
| The Meglio Group, P.C. | $5,850 | Payment in full on later of Effective Date or entry of order allowing fees | Administrative |
| Office of U.S. Trustee Fees | TBD | Payment in full on Effective Date | Administrative |
| **TOTAL** | **$20,850** | | |

Court Approval of Professional Compensation and Expenses Required:

The Court must approve all professional compensation and expenses. Each professional

person requesting compensation in the case pursuant to Sections 327, 328, 330, 331, 503(b), or

1103 of the Bankruptcy Code shall file an application for allowance of final compensation and

reimbursement of expenses not later than thirty (30) days after the Effective Date. Nothing herein

shall prohibit each professional person from requesting interim compensation during the course of

this case pending Confirmation of this Plan. No motion or application is required to fix fees

payable to the Clerk's Office or the Office of the United States Trustee, as those fees are

determined by statute.

    2.    **Priority Tax Claims**

Priority Tax claims are certain unsecured income, employment and other taxes described

by Code section 507(a)(8). The Code requires, and thus this Plan provides, that each holder of

such a 507(a)(8) priority tax claim receives the present value of such claim in deferred cash

7

payments, over a period not exceeding five (5) years from the date of the commencement of the

bankruptcy case.  The State of New Jersey has filed a proof of claim in the estimated amount of

$5,000 on account of unfiled returns for 2022 and 2023, which it asserts is entitled to priority.  To

the extent allowed, this claim will be paid in full on the Effective Date.

### C.  Classified Claims

#### 1.     Classes of Secured Claims

Secured claims are claims secured by liens on property of the estate.  The following

represent all classes containing Debtor's secured pre-petition claims and their treatment under this

| CLASS | DESCRIPTION | INSIDERS (Y/N) | IMPAIRED (Y/N) | AMOUNT | TREATMENT |
|---|---|---|---|---|---|
| 1 | Stonefield Investment Fund IV | No | No | $265,144.30 | This Claim, including interest thereon since the Petition Date, shall be paid in full on the Effective Date. |
| 2 | HOF I Grantor Trust V (First Mortgage on Property) | No | Yes | $1,549,647.21 | The portion of this Claim constituting arrearages on the mortgage, in the amount of $315,047.95 through June 30, 2025, will be paid in full on the Effective Date. The mortgage and related loan documents securing this claim will be deemed reinstated on the Effective Date, and be deemed modified by this Plan so that, among other things, the principal amount of the claim will be fixed at $1,459,880 (the "Principal"). The Debtor shall make monthly interest only |

8

| | | | | | |
|---|---|---|---|---|---|
| | | | | | payments on the Principal on the first day of the month, at the rate of 8.25%, with a balloon payment on the 1-year anniversary of the Effective Date of all outstanding amounts owing under the HOF I Grantor Trust V loan documents, which loan documents shall remain in full force and effect, as modified by this Plan. Notwithstanding the foregoing, in the event the Debtor defaults on its obligations respecting this claim, which default remains uncured for 5 days following receipt of written notice of such default, interest on the Principal shall accrue interest at the default rate set forth in the mortgage loan documents, retroactive to the Effective Date. On the Effective Date, the Debtor's license to use rents from the Property shall be deemed reinstated, and HOF I Grantor Trust V shall notify tenants at the Property to make all rent payments directly to the Reorganized Debtor. |

**Priority Non-Tax Claims**

Certain priority non-tax claims that are referred to in Code Sections 507(a)(3), (4), (5), (6), and (7) are entitled to priority treatment.  The Debtor does not believe that there are any such claims in this case.

2. **Class of General Unsecured Claims**

General unsecured claims are unsecured claims not entitled to priority under Code Section 507(a).  These claims are to be treated as follows:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 3 | General unsecured claims Total amount of claims – Approximately $120,000* * This amount is still being determined in light of the fact that certain claims are subject to objection and reclassification. | No* *any insider claims will not be included in assessing acceptance by class | Yes | Commencing September January 1, 2025 2026, claimants in this Class shall receive a *pro rata* portion of twenty (20) consecutive quarterly distributions (or fewer if paid in full, without interest) each in the amount of $6,000, totaling approximately $120,000 over the life of this Plan. |

3. **Class of Contingent Claims for Return of Tenant Security Deposits**

Three of the Debtor's tenants hold contingent claims for return of a security deposit.  Such claims are to be treated as follows:

| CLASS # | DESCRIPTION | INSIDER (Y/N) | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | Tenant Claims for Return of Security Deposits | No | No | These contingent claims will be paid in full in the ordinary course, as and when they may come due. Notwithstanding anything to the contrary contained herein, this Plan shall not alter the legal, equitable or contractual rights of holders of Claims in this Class, |

| | | | | and such claims shall not be discharged nor enjoined. |
|---|---|---|---|---|

### 3.4.Class(es) of Interest Holders

Interest holders are the parties who hold ownership interest (i.e., equity interest) in the

Debtor.  The following chart identifies the Plan's treatment of interest holders:

| CLASS # | DESCRIPTION | | IMPAIRED (Y/N) | TREATMENT |
|---|---|---|---|---|
| 4 | PL MM ROC LLC and GELFUND 1, 115 EAST ORANGE LP | | No | Interest holders in this Class shall retain their interests following Confirmation |

**D.      Acceptance or Rejection of Plan**

Only creditors whose Claims are impaired may vote on the Plan.  Class 2 and Class 3

Creditors are impaired and are entitled to accept or reject the Plan.

**E.      Means of Effectuating the Plan**

**1.      Initial Funding**

The Plan will be effectuated by an infusion of cash from the one or more entities owned by

Thomas Caleca, who is the sole member ofdirectly or through the Debtor's managing member, in

such amount(s) necessary to treat secured claims as provided above., and pay administrative

expenses.

**2.      Continued Operations**

Following the initial funding at the Effective Date, the Debtor shall perform under its reinstated mortgage loan documents, and service the debt thereunder and otherwise under this Plan, from the ~~proceeds~~rents and ~~rents~~profits from the Property.

**3.        Disbursing Agent**

The Reorganized Debtor ("Disbursing Agent") shall act as the disbursing agent for the purpose of making all distributions provided for under the Plan. The Disbursing Agent shall serve without bond and shall receive no remuneration for distribution services rendered and expenses incurred pursuant to the Plan.

**F.        Tax Consequences of Plan**

CREDITORS AND INTEREST HOLDERS CONCERNED WITH HOW THE PLAN MAY AFFECT THEIR TAX LIABILITY SHOULD CONSULT WITH THEIR OWN ACCOUNTANTS, ATTORNEYS, AND/OR ADVISORS. The following disclosure of possible tax consequences is intended solely for the purpose of alerting readers to possible tax issues this Plan may present to the Debtor. The Proponent CANNOT and DOES NOT represent that the tax consequences contained below are the only tax consequences of the Plan because the Tax Code embodies many complicated rules which make it difficult to state completely and accurately all the tax implications of any action.

**G.        Risk Factors**

The following discussion is intended to be a non-exclusive summary of certain risk attendant upon the consummation of the Plan. You are encouraged to supplement this summary with your own analysis and evaluation of the Plan and Disclosure Statement, in their entirety, and in consultation with your own advisors. Based on the analysis of the risks summarized below, the Plan Proponent believes that the Plan is viable and will meet all the requirements of confirmation.

12

The Plan is designed to settle all of the existing debts of the Debtor so that its business operations can be carried on by the current management. The provisions for claims in the Plan are in full, complete and final satisfaction of all claims, known or unknown, mature or unmatured, contingent, of every kind whatsoever that can or could be asserted against the Debtor.

## IV.    CONFIRMATION REQUIREMENTS AND PROCEDURES

PERSONS OR ENTITIES CONCERNED WITH CONFIRMATION OF THIS PLAN SHOULD CONSULT WITH THEIR OWN ATTORNEYS BECAUSE THE LAW ON CONFIRMING A PLAN OF REORGANIZATION IS VERY COMPLEX. The following discussion is intended solely for the purpose of alerting readers about basic confirmation issues, which they may wish to consider, as well as certain deadlines for filing claims. The proponent CANNOT and DOES NOT represent that the discussion contained below is a complete summary of the law on this topic.

Many requirements must be met before the Court can confirm the Plan. Some of the requirements include that the Plan be proposed in good faith, that creditors or interest holders have accepted the Plan, that the Plan pays creditors at least as much as creditors would receive in a chapter 7 liquidation, and that the Plan is feasible. These requirements are not the only requirements for confirmation.

### A.    Who May Vote or Object

#### 1.    Who May Object to Confirmation

Any party in interest may object to the confirmation of the Plan, but as explained below, not everyone is entitled to vote to accept or reject the Plan.

#### 2.    Who May Vote to Accept/Reject the Plan

13

A creditor or interest holder has a right to vote for or against the Plan if that creditor or interest holder has a claim that is both (1) allowed or allowed for voting purposes and (2) classified in an impaired class.

### a.     What is an Allowed Claim/Interest

As noted above, a creditor or interest holder must first have an allowed claim or interest to have the right to vote.  Generally, any proof of claim or interest will be allowed, unless a party in interest brings a motion objecting to the claim.  When an objection to a claim or interest is filed, the creditor or interest holder holding the claim or interest cannot vote unless the Court, after notice and hearing, either overrules the objection or allows the claim or interest for voting purposes.

THE BAR DATE FOR FILING A PROOF OF CLAIM IN THIS CASE WAS AUGUST 20, 2024.

A creditor or interest holder may have an allowed claim or interest even if a proof of claim or interest was not timely filed.  A claim is deemed allowed if (1) it is scheduled on the Debtor's schedules and such claim is not scheduled as disputed, contingent, or unliquidated, and (2) no party in interest has objected to the claim.  An interest is deemed allowed if it is scheduled and no party in interest has objected to the interest.

### b.     What is an Impaired Claim/Interest

As noted above, an allowed claim or interest only has the right to vote if it is in a class that is impaired under the Plan.  A class is impaired if the Plan alters the legal, equitable, or contractual rights of the members of that class.  For example, a class comprised of general unsecured claims is impaired if the Plan fails to pay the members of that class 100% of their claim plus interest.

14

In this case, the Proponent believes that classes 2 and 3 are impaired and that holders of claims in each of these classes therefore have the right to vote to accept or reject the Plan.  Parties who dispute the Proponent's characterization of their claim or interest as being impaired or unimpaired may file an objection to the Plan contending that the Proponent has incorrectly characterized the class.

      **3.**      **Who Is Not Entitled to Vote**

The following four types of claims are not entitled to vote:  (1) claims that have been disallowed; (2) claims in unimpaired classes; (3) claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2), and (a)(8); and (4) claims in classes that do not receive or retain any value under the Plan.  Claims in unimpaired classes are not entitled to vote because such classes are deemed to have accepted the Plan.  Claims entitled to priority pursuant to Code sections 507(a)(1), (a)(2) and (a)(8) are not entitled to vote because such claims are not placed in classes and they are required to receive certain treatment specified by the Code.  Claims in classes that do not receive or retain any value under the Plan do not vote because such classes are deemed to have rejected the Plan.  EVEN IF YOUR CLAIM IS OF THE TYPE DESCRIBED ABOVE, YOU MAY STILL HAVE A RIGHT TO OBJECT TO THE CONFIRMATION OF THE PLAN.

      **4.**      **Who Can Vote in More Than One Class**

A creditor whose claim has been allowed in part as a secured claim and in part as an unsecured claim is entitled to accept or reject a Plan in both capacities by casting one ballot for the secured part of the claim and another ballot for the unsecured claim.

      **5.**      **Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cramdown" on non-accepting classes, as discussed below.

6.      **Votes Necessary for a Class to Accept the Plan**

A class of claims is considered to have accepted the Plan when more than one-half (½) in number and at least two-thirds (2/3) in dollar amount of the allowed claims that actually voted, voted in favor of the Plan.  A class of interests is considered to have accepted the Plan when at least two-thirds (2/3) in amount of the allowed interest-holders of such class which actually voted, voted to accept the Plan.

7.      **Treatment of Nonaccepting Classes**

As noted above, even if all impaired classes do not accept the proposed Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner required by the Bankruptcy Code.  The process by which the nonaccepting classes are forced to be bound by the terms of the Plan is commonly referred to as "cramdown."  The Code allows the Plan to be "crammed down" on nonaccepting classes of claims or interests if it meets all consensual requirements except the voting requirements of section 1129(a)(8) and if the Plan does not "discriminate unfairly" and is "fair and equitable" toward each impaired class that has not voted to accept the Plan as referred to in section 1129(b) and applicable case law.

8.      **Request for Confirmation Despite Nonacceptance by Impaired Class(es)**

The Plan Proponent asks the Court to confirm this Plan by cramdown on impaired classes if any of these classes do not vote to accept the Plan.

B.      **Liquidation Analysis**

16

Another confirmation requirement is the "Best Interest Test," which requires a liquidation analysis. Under the Best Interest Test, if a claimant or interest holder is in an impaired class and that claimant or interest holder does not vote to accept the Plan, then that claimant or interest holder must receive or retain under the Plan property of a value not less than the amount that such holder would receive or retain if the Debtor were liquidated under chapter 7 of the Bankruptcy Code.

In a chapter 7 case, the Debtor's assets are usually sold by a chapter 7 trustee. Secured creditors are paid first from the sales proceeds of properties on which the secured creditor has a lien. Administrative claims are paid next. Next, unsecured creditors are paid from any remaining sales proceeds, according to their rights of priority. Unsecured creditors with the same priority share in proportion to the amount of their allowed claims. Finally, interest holders receive the balance that remains after all creditors are paid, if any.

In order for the Court to be able to confirm this Plan, the Court must find that all creditors and interest holders who do not accept the Plan will receive at least as much under the Plan as such holders would receive under a chapter 7 liquidation. The Plan Proponent maintains that this requirement is met here for the following reasons:

The Debtor believes that all creditors and interest holders will receive at least as much under the Plan as such creditor or interest holder would receive under a chapter 7 liquidation. The Debtor's opinion as to the likely results of liquidation is as follows:

| ASSETS | |
|---|---|
| Real Property and FFE | $1,500,000.00 (estimated) |
| | |
| **TOTAL ASSETS** | **$1,500,000.00** |
| **LIABILITIES** | |
| **Secured Liabilities** | |

17

| | |
|---|---|
| HOF I Grantor Trust V LLC | $1,700,00.00 (approximate) |
| Real Property Taxes | $300,000 (approximate) |
| Total Secured Liabilities | $2,000,000 |
| **Equity** (Total Asset Value Less Total Secured Liabilities) | $0.00 |
| **Chapter 11 Administrative Expenses** | $20,850 |
| **Unsecured Liabilities** | $300,000 (approx.) |
| AMOUNT PAID UNDER CHAPTER 7 TO UNSECURED CREDITORS* | 0 |
| AMOUNT TO BE PAID PER PLAN | $120,000 |
| Expressed as % of claim | Approx. 100% because affiliate intercompany claims will be waived |

\* This amount does not take into account Chapter 7 expenses of administration which further reduce any amount payable to unsecured creditors. These typically are estimated to be approximately 10% of the Debtor's total asset pool. This estimation is based upon the Chapter 7 trustee's right to his or her own administrative expenses in addition to expenses related to retention of an attorney, an appraiser to value the Debtor's assets, and possibly an accountant.

   **C.    Feasibility**

   Another requirement for confirmation involves the feasibility of the Plan, which means that confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of the Debtor or any successor to the Debtor under the Plan, unless such liquidation or reorganization is proposed in the Plan.

   There are at least two important aspects of a feasibility analysis.  The first aspect considers whether the Debtor will have enough cash on hand on the Effective Date of the Plan to pay all the claims and expenses that are entitled to be paid on such date.  The Plan Proponent maintains that this aspect of feasibility is satisfied as illustrated here:

Cash Debtor will have on hand by Effective Date:    $650,000

18

**To Pay**:  Administrative claims - $28,050

**To Pay**:  Statutory costs & charges - TBD

**To Pay**:  Other Plan Payments due on Effective Date - $615,000

**Balance** after paying these amounts:  approximately $7,500

The second aspect considers whether the Proponent will have enough cash over the life of the Plan to make the required Plan payments.

The Proponent believes that this second aspect of the feasibility requirement is met for the following reasons:  See Cash Flow Projections attached as **Exhibit B.**

Accordingly, the Plan Proponent believes, on the basis of the foregoing, that the Plan is feasible.

V.      **TREATMENT OF MISCELLANEOUS ITEMS**

A.      **Executory Contracts and Unexpired Leases**

On the Effective Date, all Executory Contracts and Unexpired Leases not assumed shall be deemed to be rejected; provided, however, that any operating agreement and tenant leases of the Debtor shall be deemed assumed.

.

The Order confirming the Plan shall constitute an Order approving the assumption and rejection, respectively, of any and all the leases or contracts described above.  If you are a party to a contract or lease to be rejected and you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

Any claim based on the rejection of an executory contract or unexpired lease will be barred if the proof of claim is not filed within thirty (30) days after entry of the Confirmation Order.

B.      **Changes in Rates Subject to Regulatory Commission Approval**

19

This Debtor is not subject to governmental regulatory commission of approval of its rates.

**C.      Retention of Jurisdiction**

The Court shall retain jurisdiction of this case as provided in Section III.C. of the Plan.

**D.      Procedures for Resolving Contested Claims**

Objections to Claims, except for those Claims more specifically deemed Allowed in the Plan, may be filed by the Reorganized Debtor or any party in interest up to and including sixty (60) days following entry of the Confirmation Order.  With respect to disputed Claims, the Disbursing Agent will hold in a separate interest-bearing reserve account such funds as would be necessary in order to make the required distribution on the Claim, as listed either in the Debtor's schedules or the filed proof(s) of claim.

**E.      Notices under the Plan**

All notices, requests or demands with respect to this Plan shall be in writing and shall be deemed to have been received within five (5) days of the date of mailing, provided they are sent by registered mail or certified mail, postage prepaid, return receipt requested, and if sent to the Proponent, addressed to:

> Douglas J. McGill, Esq.
> Webber McGill LLC
> 100 E. Hanover Avenue, Suite 401
> Cedar Knolls, New Jersey 07927

**VI.      EFFECT OF CONFIRMATION OF PLAN**

**A.      Binding Effect/Retention of Equity Interests**

The provisions of this Plan shall be binding upon Debtor and all Creditors, regardless of whether such Claims are impaired or whether such parties accept this Plan, upon Confirmation thereof.  Confirmation of the Plan shall not extinguish the equity interests in the Debtor, which interests shall be retained post-confirmation.

**B.**      **Release of Claims**

Except as otherwise expressly provided for in this Plan, the distributions and rights afforded in the Plan shall be complete and full satisfaction and release, effective as of the Effective Date, of all Claims against the Debtor or any of its assets or properties of any nature whatsoever.

**C.**      **Revesting of Property in the Debtor**

Except as may otherwise be provided in ~~Section VI.E. hereinafter, and except as provided elsewhere in the~~this Plan, Confirmation shall revest all of the property of the estate in the Debtor. Following the Effective Date, PL MM ROC LLC shall continue to manage the Reorganized Debtor.

**D.**      **Modification of Plan**

The Proponent of the Plan may modify the Plan at any time before Confirmation.  The Proponent may also seek to modify the Plan at any time after Confirmation so long as (1) the Plan has not been substantially consummated <u>and</u> (2) the Court authorizes the proposed modification after notice and a hearing.

**E.**      **Post-Confirmation Conversion/Dismissal**

A creditor or party in interest may bring a motion to convert or dismiss the case under § 1112(b), after the Plan is confirmed, if there is a default in performing under the Plan.  If the Court orders the case converted to Chapter 7 after the Plan is confirmed, then all property that had been property of the Chapter 11 estate, and that has not been disbursed pursuant to the Plan, will revest in the Chapter 7 estate, and the automatic stay will be reimposed upon the revested property only to the extent that relief from the stay was not previously granted by the Court during this case.

21

**F.      Post-Confirmation Quarterly Fees**

Quarterly fees pursuant to 28 U.S.C. Section 1930(a)(6) continue to be payable to the Office of the United States Trustee post-confirmation until such time as the case is converted, dismissed, or closed pursuant to a final decree.

210 SPRINGDALE EO LLC

By: PL MM ROC LLC, Managing Member

By:    /s/ _____
Thomas J. Caleca, Sole Member

Dated: ~~May~~July 20, 2025

22